Anderson v. Kingsley. Mr. Hendrick, whenever you're ready, we'll hear from you. Good morning. May it please the Court, my name is Andrew Hendrick. I'm counsel for Appellant Albert Anderson. In Farmer v. Brennan, the Supreme Court specifically undertook to define the meaning of the phrase deliberate indifference in the context of an Eighth Amendment case for failure to protect an inmate. The Farmer court defined deliberate indifference in terms of recklessness and rejected a definition that requires purposeful or knowing conduct. This Court has followed- That's not what you're talking about. That's a little too general. The big problem at your brief and the opposing brief and a lot of the discussion about this instruction is, is what conduct are you attributing deliberateness to? I mean, there has to be action, a refusal to act in the face of actual knowledge. Now, that could be reckless, but there still has to be a refusal, a subjective knowledge of it and a refusal to do anything about it. That's the indifference, right? I think that's correct. The first- Can you have accidental refusal or refusal is always deliberate, isn't it? You could, I think, have a negligent refusal. It's not a refusal. It's a failure. That's correct. It'd be a failure. And this Court has rejected that. It says there's immense rea in connection with this. The deliberate indifference has immense rea. You have to have actual subjective knowledge of the risk and you have to refuse to address it knowing that. And the refusal has to be a deliberate refusal. Otherwise, it's not a refusal. It's tautological to say a refusal is intentional. You first have to have the actual knowledge and the Supreme Court defines that in Farmer- That was the big issue in Farmer. That's right. Subjective knowledge. And it said because there's immense rea, that particular person had to have knowledge of the risk. That's correct. And then in the face of that knowledge, the defendant then had to refuse to do anything about it, right? Refuse or fail to do something about it. Show me that. That's meaningful. In Farmer, I can quote from page 842, an Eighth Amendment claimant need not show that a prison would befall an inmate. That's a focus on the question of there does not have to be an intent to harm. Correct. Just the recklessness has to be intent to harm. But there has to be an intent to refuse to act. The next, if we continue that quote, the court said, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm. So there has to be a failure to act. That's what we had in- Deliberate failure to act. That's what deliberate indifference is about. Well, sure. I think, but that's different than saying that when you put the word intentional in the jury instruction, which is a word that's not used in Farmer or in any of this court's precedents. That's your problem here, at least from what I understand it to be, as Judge Niemeyer points out, the refusal can be intentional. But failure has to be something less than intentional. And it is the manner in which these instructions were given when you say intentionally refusing or failing. The question then becomes, does the intentional modify both the refusal and the failure? And your contention is here it was, it did do so, particularly in light of the trial judge's comments, before doing it. And that would be error. Is that what I understand you to say? I think that's correct. I think it's not clear whether it's intentionally refused or intentionally failed or both. I think also including the word intentional in the instruction at all confuses the intended action and the intended purpose. I think Farmer is clear that we don't have to have an intended purpose to harm the inmate. But I think when you put that word in the instruction, it also confuses the jury on that point about, did they intend the result that... And that's your point, isn't it? As I understand your appeal, that you believe the jury instruction... I want to make sure I get this right. You believe that the jury instruction conveyed to the jury that they had to find an intent to harm, to cause this harm? I think that's one result of having the word intentional in the instruction. I think it's a confusing instruction because it's mixing the standards of recklessness and intentional conduct. But that's the result you believe was an error. That's correct. That we're confusing the jury. I mean, you can have intent can mean a couple of different things. It can mean the intent to injure the inmate. That's not required clearly under Farmer. Now, if you look at the government brief, and I'm looking at page 7 of the government brief that's quoting the instruction that was given by the trial judge, and you look at the last paragraph, and what they have in there is that by intentionally refusing or recklessly failing, with a couple of commas thrown in there. Now, if it's written in that way, is anything wrong with this instruction? I think you still can't have the word intentionally in there because, as I mentioned, it's confusing. But are you listening to me? You're looking at this instruction. What you ought to be saying is where did they get it from? You ought to go to page 107 and 108 in the transcript and ask, is that the instruction that the trial judge gave? No, that's not. Why didn't you answer it that way? I mean, the first thing you should have said, he didn't say recklessly failing. And had he said recklessly failing, that would be correct, would it not? I think it... Unless I'm misreading this, am I misreading what's right here in the government's brief? That's what is in the government's brief as quoting the trial court, but as... That's not what the trial judge gave, is it? No, it's not. The trial court did not have... Recklessly disregarded, having knowledge, disregarded that risk by two things, intentionally refusing or failing to take reasonable measures. You say that's error? I think you don't need to put the word intentionally in there at all. I think... You probably don't because refusing is intentional. It's probably surplusage. But the real question is, does that make that erroneous? I think the defendants also cited the case, the unpublished case, Hoy. Let me answer my question first. If it was what is in this brief as the government wrote it, that would not be incorrect, would it? To say intentionally refusing or recklessly failing, that would be correct, would it not? I would still argue that you can't have the word intentionally, but... When you know you didn't put this in here. You know what's in there, but you know what the transcript actually says, intentionally refusing or failing. Why would you argue something that's not in here? Why wouldn't you just say that? Because it looks like it would be error to me. I'm sorry, I don't follow your question. It would be error to say it in the manner the trial judge said it and then say, in fact, the trial judge said something different than what was said. Right, the defendant's brief misquoted the trial court. But it's a material misquote, is what I'm saying. That's right. If it was said this way, there would be no error. I see where you're going, sure. If it was said this way, there would be no error, but it didn't say it this way. I understand your point. It's a misquote in the defendant's brief, and that's not what the trial court said. Do you contend that the model jury instructions are erroneous? Courts are used all across the country every day. I don't think it follows the language of Farmer. I don't know the history of those instructions. This court... It's actually identical to what the district court gave here. It said, if the... It says, by intentionally refusing or failing to take reasonable measures. That's what the model thing... It says, if defendant prison officials disregard that risk by intentionally refusing or failing to take reasonable measures to deal with the risk. Now, the district court gave you a gratuity adjective in there, it said, recklessly disregard, which telegraphs a standard that it did not intend the outcome, the harm, but it did give the model jury instruction. I think this court, in the Skinto case cited in our briefs, cautioned against misquoting this court's precedence, which, as I've mentioned a few times, did not include this instruction or that word intentional. It's always in terms of less than intentional, and I think that's our argument. Can you answer that in the manner of pointing right to the record, what the district court actually interpreted this to mean on page 74? It's very clear he's saying the word intentional, and he says, it has to be intentional failure that has caused this harm. He says it right here in the record. So even if the model instructor said, he's saying this is what I'm saying, that's the way he interprets this, why is that not the answer? I think it is the answer. I think that the trial court misunderstood the standard by, I'll quote again from the record on page 45, I think the judge, the trial court, was mixing the DREA standard of having to have knowledge of the risk with what comes after the knowledge is proven. What's the standard there? And the court said on page 45 of the record, the jury might get confused about the knowledge of the risk if I attempt to encapsulate deliberate indifference as something like recklessness. I think recklessness is the standard. That's what Farmer said. That's what this court has said over and over. And I think the jury construction that was given. Do you agree with the statement that mere negligence or inadvertence does not constitute deliberate indifference? I think that's a proper statement, yes. Mr. Hendricks, let me ask you this. In the case of Estelle v. Gamble, in talking about deliberate indifference to the medical needs of a prisoner, the Supreme Court said that the indifference may be manifested by the prison guards intentionally denying or delaying access to medical care or intentionally inferring, interfering with the treatment once it's prescribed. Do you not see in that an acknowledgment by the Supreme Court that intent with regard to these particular activities, its lack of action, is an appropriate description of what's required with regard to the mental capacity or use of the people who are being accused by you in the 1983 action? I think if you read the cases, the medical indifference cases are slightly different than this case where it's a failure to protect from an assault by another inmate. Estelle was the former. Farmer was... Why would, with regard to the question of intent, would there be a difference? What's the difference in the two cases that would explain why there would be the difference that you say that should exist? Well, in the medical case, it's the prison officials who are actually providing the medical care. In this case, it's did they do something to stop another third inmate from assaulting the plaintiff. So, in a medical case, it's the prison officials themselves who are acting or not acting that cause the injury. In this type of case, it's whether or not they're doing something to prevent an assault by another inmate. And that's the kind of case Farmer was. And Farmer is the case that has been followed in these prisoner assault cases. That's the line of cases where I don't think you can find the word intentional. But do you think there's anything in Farmer that changes the law in Estelle? As to a prisoner assault case, I don't think so. And like I said, I think the standard, reading some of the cases, it's slightly different for a medical case rather than a prisoner assault case. In both cases though, whether it's attention to the medical needs of the prisoner or attention to protection of the prisoner, in the question, what does the defendant know and what steps does he take, whether deliberate or not, to alleviate that risk? It's still deliberate indifference, yes. But I think the facts of each particular case are slightly different enough that you just don't find that phrase in any of the prisoner assault cases that I've read in Farmer or in Estelle. So in a question with regard to medical care of a prisoner, intent is required on the part of the prison official, but it's not required on the part of the prison official with regard to a danger to an inmate. It's physical instead of medical? No, I don't think intent's required, but the phrasing of those cases is different. In this case, being a prisoner assault case, that's not the standard that Farmer set out. And I think that's my answer to that. Okay, well Estelle's still good law. Do we agree on that? I would agree. It's still good law on medical cases, yes. And let me ask you one other question before we go. You cited, with regard to the facts in the case, and I'm just curious about this, you cited the complaint with regard to what the facts in the case were, and I don't understand why you would cite a complaint when this case went to trial and why we don't have the transcript of what actually happened, what the testimony was. My thinking was that the issue was simple. It's simply a jury instruction. There was not really been a cross-appeal by the other side on whether the instruction was warranted. And rather than give the court transcripts from three days of a jury trial when the facts as to whether the jury instruction is proper or not would seem to be rather undisputed. I mean, the facts of what happened are disputed, but the facts of the allegations which the jury had to decide between are not really in dispute. I thought reading the court's rules on not providing too much information warranted against giving you three days' worth of transcripts. Thank you. Thank you. Mr. Rosen? Good morning, and may it please the Court. Jeff Rosen on behalf of Deputy Stewart and Deputy Kingsley. The trial court properly instructed the jury on deliberate indifference. The instruction was a correct statement of the law and did not hold Anderson to an erroneous standard of proof. Deliberate indifference, deliberate means intentional. That's a common usage. By including intentionally in defined deliberate indifference, the trial court was in accord with Farmer versus Brennan. The court had an in-depth discussion analysis. He followed both model jury instructions and instructions previously approved by this court. The trial court's instructions as a whole provided the jury with the principles and meaning of deliberate indifference. Anderson ignored the principle when reviewing an objection to a jury instruction, a specific word. Clearly, the jury instructions in totality must fairly state the controlling law, which they did in this case. Tell me about your recitation of the instruction on page 7 in your brief that I spoke to about opposing counsel, where you state intentionally refusing or recklessly failing. Is that what the trial judge instructed? That was my understanding of what the trial judge instructed. I was kind of confused by your comment, Judge. Your quote is erroneous. Yeah, it's inaccurate. It's an accurate, Judge. In your manuscript on page 107 that you have down there, look at what the trial judge actually instructed. And note that you added a couple of commas in there and added the word recklessly in front of failure. It looks like more than a typo. It looks like a position you're taking. It's a pretty serious error because we're talking about the specific language that the judge used in this case. And that's not what the court said. Well, you're right, actually. I apologize to the court. The transcript of the joint appendix on page 107 clearly states what the instruction was. And it says that in this case, there's no dispute that the defendants were acting under color of state law. And Mr. Anderson, as an inmate in the Gloucester County Jail, had a right under the Eighth Amendment to be protected from attacks by other inmates. But he may only recover from these defendants if they knew of a substantial risk of serious harm to him while in custody and failed or refused to take reasonable measures to prevent that harm. That's an accurate statement of the law. And I apologize for the error in the brief, Judge. Well, I mean, that error is significant. If he had stated as you put it in the brief, there's a good chance we wouldn't be up here. Well, Judge, I said the record speaks for itself. The joint appendix speaks for itself. As I said, I apologize for the error in the brief. I just don't understand how you make that kind of error. It seems like to me that's what the whole case is about. And to put that in there as though that's what the trial judge said, that's all we read. We said, oh, this case is over. And then you go look at the transcript and say, oh, no, that's not what he said. Well, all I can do is apologize, Judge. As I said, it was a collaborative effort. When the defendant at trial asked the trial judge to not include that word intentional, the trial judge responded on page 74 that it has to be an intentional failure. And so when he puts intentionally refusing or failing, he's talking intentionally failing. He's not saying recklessly failing. I mean, that's pretty clear from his testimony, from his statement here. Well, in the end, Judge, the instruction that he gave is the one that we have to live with. Well, let me ask you this. If a judge gives an instruction from a model instruction, but nonetheless he states on the record unequivocally an interpretation that is wrong, do we assume that even though the judge got it wrong, these jurors out there got it right? No, if he gave the correct model instruction, there's no error. I understand that. But he said, what I'm asking you is when he says it has to be an intentional failure and he instructs intentionally refusing or failing, and he thinks that means intentional failure, then he gives a model instruction to a late jury, he has a different interpretation. You're saying the jury ought to take the interpretation from the instruction that's different from the judge. You see where I'm going with that? Does that make sense? Well, I think the instruction that was given is what we have to live with. I got that. You see where I'm going with this? If you've got the trial judge up here interpreting that instruction that means something, he gives the instruction, we look at it and say, oh, well, that instruction didn't mean this. It meant this, and the jury got it this. But the judge didn't. Right. Well, I think it's— How can you reasonably believe that late jury out there is going to interpret that instruction different from the judge who's given it? I think— And his purpose in giving it is stated right here on page 74. I would say no harm, no foul. I mean, if the correct instruction was given, and models, if the correct instruction was given, then there's no error. Words trump actual meaning or context. No. If you say the words and it can be gleaned, that's what these words mean, but you've got a trial judge up here who gives something contrary to what you are saying, then you're saying that's okay. I'm saying that if—that all we can go by is the totality of the instructions that were submitted to the jury, that were given to the jury. That's all we can go by. We would do that if we didn't have the trial judge actually stating what he meant by it. Well, but— And we didn't have you misquoted in your brief over there. Well, when the issue came—when the issue was raised by plaintiff's counsel at the trial, when we were arguing instructions, he wanted to rewrite the instructions contrary to as— The word intentional taken out. Right. Well, he wanted to— That farmer says you ought to just do something less than intentional, more than mere negligence, but somewhere in between. But that's—well, as Judge Niemeyer said, the refusal has to be deliberate. It has to be a deliberate refusal. It has to—the person has to know what they're doing. It can't be accidental. Did you reasonably believe you needed to have intentional to win this case? Don't you think you could win this case with the word reckless in front of it? Well, I think I probably could have won it either way, Judge. So why— The jury was out 20 minutes. Why wouldn't you just have the trial judge instruct it that way and then we don't have to deal with it? Because I always prefer to go with the model. I think the model is a safer way to go than rewrite the jury instructions. I think that is generally rife with error. That's why we generally—what's your preference, Mr. Rosen? I said I prefer going with the model. That's generally the safest route to go rather than rewrite the instructions and recreate the will. Maybe I won't do that anymore. Well, you could, except when you hear the trial judge tell you what he thinks the model means. He thinks it means intentionally failing. Well, I— Page 74, he says it. I thought— At what point in time, why wouldn't you say, Judge, do it like I got it in my brief here and just add the word recklessly in front of it? Well, what I suggested to the judge and what he did was use the model instruction. That's what he did. That was my— Do you think that reckless failure would be more like inadvertence, reckless inadvertence, or deliberate indifference? Reckless would be more like inadvertence. And the Supreme Court and everybody else has said, LaFave and all the others have said, inadvertence is not sufficient. Exactly. Exactly. And I don't see—I've not seen any change in the law since 1994 when Farmer was decided. But now let's be clear. Reckless is not equivalent to inadvertence. It is something less than intentional, but it's not just inadvertence. I mean, you just can't substitute the word inadvertence when it's supposed to be reckless in any other area of the law I know of. Well, similarly, you can't—deliberate means intentional. Deliberate means intentional. Reckless is a little bit more. And that's kind of the Farmer standard is if it's not intentional, not quite there. It's not mere negligence. It's not just inadvertence. It's something more, but it's less than intentional. That's where you get the word reckless from. It's a different word. Well, to me, deliberate means intentional. Deliberate indifference has to have some—it has intent. You can't be accidentally indifferent—deliberate indifference. That's what the—that's what it's called, deliberate indifference. And so, to me, that— I thought Farmer's talking reckless with respect to the harm and not with respect to the acting to refuse or fail. I agree with you, Your Honor. I agree with you. You explained pretty clearly that the deliberate failure doesn't have to be intent to harm. You can have—it can be as to the harm. It can be reckless. But the refusal and the failure seems to me to be deliberate, has to be deliberate. Otherwise, you don't have the mens rea. And I think that's what the judge was trying to do by—when he was crafting the—in talking about the instruction. That's why he thought intentional was a necessary element. That's what he—that's why he mentioned that. But he did give the model instruction. And as I said, I think that is an adequate—that is a proper interpretation of law. And that's why there—so I suggest that there is no error. We would ask the Court to affirm the trial court's ruling and enter judgment on behalf of the defendants. I mean— Mr. Rosen, I have some questions I wanted to ask you. Certainly. My question is going to boil down to this eventually. Did the dispute you're having over this charge make a difference? And here's my question. Since I don't have the transcript, I don't know what people testified to, I don't know what the evidence was. But the question I've got is, in the testimony, if you viewed it in the light most favorable to the plaintiff, how would the jury determine whether or not the omission was inadvertent or intentional or something other than that? In other words, the only thing I could get out of what was in the brief was it didn't get—he was asked that it be done, but it wasn't done. But how—what evidence would the jury have before it to determine whether the fact it wasn't done was inadvertent or intentional or something else? How would they make that distinction if you look at the testimony in the light most favorable to Anderson? Well, unfortunately, plaintiff's counsel did not submit the actual transcript. So what the evidence— You could have put it in. Well, we could have, Judge. We could have, exactly. But based on the evidence, I was—the jury was out 20 minutes and had no problem concluding that, that Mr. Anderson never told either deputy that he was afraid of Mr. Riley or had ever submitted a request form suggesting— Is that his testimony? Excuse me? Is that Anderson's testimony? Well, that was—  Yes, Anderson— View it in the light most favorable to Anderson. Anderson's testimony, Anderson admitted that he never asked to be put on the enemies list and the defendants testified that he never said—he never said the reason why he wanted a transfer to another cell. That was the testimony. How did this make a difference? How did this charge make a difference? I don't think it did. I don't think it did. I don't think putting intentional not in the instruction made a difference in the end. I don't think it did. Because it wasn't a dispute. Right. Exactly. Exactly. Okay. Thank you. Thank you. Thank you, Mr. Rowe. Mr. Hendry? Mr. Hendry, could you pick up where we just left off? Give me the testimony and evidence in the light most favorable to your client that would show how the jury could make a distinction between whether or not the omission was intentional or inadvertent or something else? The testimony— What evidence would they look at? What evidence would they evaluate to make that decision, this in the record? The testimony was from Mr. Anderson that he reported that he had felt threatened by the other inmate, gave a written request to a deputy reporting that threat and asking— I thought that he didn't request any protection. He requested to be moved because he felt threatened. And under the jail— He was moved. He was moved, although the testimony of the deputies was not because he had been threatened but simply because he wanted to go to a different cell with more space. So the key factual dispute of the case was did he tell the deputies about the threat or not? So that's the way we prove the actual knowledge is if the jury believes Mr. Anderson, they would believe that he reported that he had been threatened by an inmate. But let's assume that. Okay, he reports a threat. How does the jury determine—and then your position is officers didn't do anything and he got hurt. But how was the jury to determine if the officers didn't do anything, whether or not that failure to act was intentional or simply inadvertent or something else? What evidence is there for them to base that decision on? There's evidence that when officers receive a threat, they're supposed to put two inmates—receive notice of a threat. They're supposed to put the two inmates on the enemies list, which means they're not going to be put together in the same hallway. That didn't happen. There's no dispute that that didn't happen. The dispute is, well, why not? Either they believe Mr. Anderson, they knew of the threat and decided not to put—to do the enemies list, or if you believe the deputies, they never knew about the threat at all. So that's why they didn't do it. So how was the jury to determine whether or not their not putting him on the enemies list was inadvertent or intentional? By the fact that they knew about the threat and didn't do anything. They can conclude from that that it was reckless, that it was deliberately indifferent, because here they have a threat. We know of a threat. We know what the policies are that we're supposed to do to prevent this threat from being carried out, and we did nothing. But if their doing nothing was simply inadvertent, just a mistake, simple negligence, there's no liability. And the jury has to be able to determine— If the jury— Which of the two it is, there's got to be something they can point to, to say this shows it was intentional as opposed to inadvertent. If the jury thought it was negligence or inadvertently failing to put Riley and Anderson on the enemies list, they could have concluded that and there would be no liability. I don't think that fits under the facts of this case because the deputies are not saying we meant to do this or we didn't think it was a serious enough threat. They're saying there was no threat at all. So a jury defined for Mr. Anderson is first going to have to find that they were notified of a significant threat and did nothing. And I think a jury can conclude from the fact that nothing happened, the enemies list didn't get filled out, that that was enough to conclude recklessness. From the simple fact it didn't get done, the jury could make a decision as to whether that was intentional or inadvertent. Well, if I can quote from Farmer, the court there said, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of seriousness. My question goes to what evidence in the case the jury would rely on to make that decision? They're going to rely on the fact that Anderson told them about the risk and the fact that the deputies admitted that when they get notice of a risk, the policies require that the inmates be put on the enemies list. The fact that they didn't put them on the enemies list and the fact that two days later they were in a situation together where they would not have been had the enemies list been completed and Anderson was assaulted. Would you agree that if that omission was inadvertent and a matter of simple negligence, there'd be no liability? If the jury concluded that they negligently failed to put Riley on the enemies list, yes. They would conclude, well, the deputies, we got the threat, maybe we ought to put it on, or they forgot, that would be negligence, there's no liability. But a jury can conclude, if I may finish my statement, a jury could conclude that having notice of, actual notice of the threat, policies in place on what to do, and they didn't do it. I think a jury could conclude that that was sufficient to be reckless. I used up all your time. Maybe Judge Mead, I might give you a minute or two. Say what you wanted to say before you got up. You can have a minute or two if you want, or you can conclude, however you wish. I would conclude by reading the instruction that we submitted to the trial court. Deliberate indifference means that something was done recklessly. It is not necessary that the plaintiff show that the defendant or either of them actually believe that the plaintiff would be assaulted. It is enough if the defendant or the defendants failed to act despite knowledge of a substantial risk to the plaintiff. We think that instruction complies with Farmer and this court's precedent, and we would ask that the jury verdict be vacated and this be remanded for a new trial. All right, thank you. Thank you. We'll come down, take a break, come down and re-counsel.
judges: Paul V. Niemeyer, William B. Traxler, Jr., James A. Wynn, Jr.